# Fidelity & Casualty Co. of New York v. Board of Regents of Eastern Kentucky State Normal School and Teachers College.

June 13, 1941.

G. Murray Smith and Jerry A. Hogan for appellant.

M. B. Holifield, Assistant Attorney General, and John Noland for appellee.

OPINION OF THE COURT BY JUDGE TILFORD—Affirming.

This is an appeal from a judgment of the Madison Circuit Court awarding appellee a recovery against appellant for amounts expended in discharge of sub-contractors' liens arising out of the construction of school properties.

On July 1, 1930, the appellee, hereinafter referred to as the Regents, employed the DeRuntz Heating & Plumbing Company, hereinafter referred to as the Heating Company, to furnish and install the plumbing for a swimming pool to be constructed in what is known as the Weaver Health building located on the college campus at Richmond, Kentucky. The contract price was $15,868.23, and the appellant was surety on the Heating Company's bond guaranteeing the faithful performance of the contract. The Heating Company sub-let certain portions of the work to the Kring-Becker Company, the Sims Heater Company, and others whose claims are not in controversy, and on March 18, 1931, abandoned its contract and filed a voluntary petition in bankruptcy. On the preceding day Lon E. DeRuntz, the president of the Heating Company, had presented his affidavit to the Regents stating that all bills for material and labor incurred by his Company and "now payable" had been paid, with the exception of $625 due the Sims Heater Company, and two other small accounts aggregating $142.60. Relying on the affidavit, the Regents paid DeRuntz, $2,500, making a total of $10,759 paid the Heating Company prior to the bankruptcy. As a matter of fact, the unpaid claims of the sub-contractors at the

time DeRuntz made the affidavit aggregated $6,226.54, including the claim of the Kring-Becker Company for $3,780. The latter company was the possessor of patent rights covering certain appliances necessary to the operation of the swimming pool and declined to complete the work, although it was nearly finished, unless it was assured its contract price of $3,780 would be paid. The Regents had advertised the early completion of the swimming pool, and, according to their testimony, obtained the permission of the appellant to instruct the Kring-Becker Company to complete the installation. That Company completed its work on June 13th, immediately notified the Regents in writing of its intention to claim a lien on the funds in their hands, and on August 18th, filed a statemet of lien in the Madison County Court Clerk's office. What work or materials, if any, were furnished thereafter by the Sims Heater Company does not appear, but on June 6th, the Sims Heater Company notified the Regents in writing of its intention to claim a lien, and on August 22d, filed its statement of lien in the County Court Clerk's office. These steps were taken pursuant to the provisions of Sections 2492 and 2494, Kentucky Statutes, the latter of which, prior to the 1934 amendment, provided that the statement of lien must be filed in the Clerk's office "within sixty days after the last day of the last month in which any labor was performed or materials or teams were furnished," and, it is apparent that by the procedure referred to, the Kring-Becker Company acquired a valid lien on the funds in the hands of the Regents, unless, as contended by appellant, it was precluded from furnishing labor and material after the bankruptcy of the principal contractor. In the latter event, since the bankruptcy occurred in March, it was encumbent upon the Kring-Becker Company to have filed its statement of lien during May.

On April 6, 1931, the Regents, pursuant to the provisions of the building contract and with the consent of the appellant, employed the Ben F. Hurst Company for the sum of $3,907.25 to complete the Heating Company's contract. This did not include the work covered by the sub-contract of the Kring-Becker Company. The Hurst contract was proportionately more favorable than the original contract made by the Regents with the Heating Company, and $1,201 of the original contract price saved thereby was subsequently credited on the Regents' claim

against the appellant for $3,780, the sum eventually paid by the Regents to the Kring-Becker Company. The Chancellor awarded the Regents the relief prayed; the validity of two of the claims for reimbursement asserted by the Regents is not disputed; and, as heretofore indicated, this appeal involves only the correctness of the Chancellor's ruling that the Regents are entitled to recover of the appellant the amount expended by them in discharge of the Sims Heater Company claim and the Kring-Becker Company claim after deducting the credit referred to.

The bond which the appellant executed did not guarantee the payment of claims for labor performed or materials furnished, and hence did not inure to the benefit of sub-contractors. But it did guarantee the faithful performance of the contract by the contractor, and its necessary intendment and effect was to insure the Regents reimbursement, within the limits of the penal sum, for monies necessarily expended by them in discharge of validly established liens. So much is conceded, and it is therefore unnecessary to set forth in full the terms of either the contract or the bond. However, it is necessary to quote those portions relating to the right of the general contractor to receive payments, in view of appellant's assertion that the $2500 payment of March 17, 1931, was made in violation of the conditions of the contract and relieved appellant of liability.

The contract:

"And it is hereby mutually agreed between the parties hereto that the owner will pay to the contractor for said work the sum of fifteen thousand eight hundred and sixty eight dollars and twenty three cents ($15,868.23) subject to the additions or deductions on account of alterations that may be made in the said drawings or specifications; such sums shall be paid in current funds or State Warrants upon certificate of the Architects C. C. & S. K. Weber, Ten per cent (10%) to be retained from the amount of each certificate and to be paid within thirty days after the final completion of all work included in this contract."

The Bond:

"The Obligee shall retain such proportion as the contract specifies that the Obligee shall or may re-

tain of the value of all work performed or materials furnished in the prosecution of the contract (but not less in any event than ten per cent of such value) until the Principal has completely performed all the terms, covenants, and conditions of the contract to be performed by the Principal.''

Also pertinent are the following provisions appearing in the Specifications:

''Payments of ninety (90%) percent of the value of the work executed and satisfactorily done, based upon the estimated value of same as ascertained by the Architects, shall be made every thirty days or as may be provided in the contract. The payment of the retained ten (10%) percent will be made after the final approval and acceptance by the Architects and Board of all work and materials embraced in the contract, but no payment shall be due until every part of the work to the point of advancement reached (for which payment is claimed) shall be satisfactorily supplied and executed in every particular, and all defects therein remedied to the satisfaction of the Architects. To aid the Architects in ascertaining the proportionate value of the work done and in place, the contractor shall furnish to them before any payment shall be due a statement showing the estimated cost of each part of the work to total equaling the contract price.

''No payment shall be made on account of this contract except upon the written order or certificate of the Architects, certifying that payment is due, and if, in their opinion, the work for which payment is claimed has not progressed in proportion to the time consumed, the Architects shall have the right to withhold such vouchers or certificates until progress satisfactory to them has been made.

''The Board reserves the right to require of contractors at any time during performance of contract a certified statement of the financial status of contract, showing how the previous payments have been distributed. This, however, shall not release the bondsmen of any of their responsibilities.''

It is apparent that the purpose of the foregoing provisions was to insure the retention by the Regents of ten per cent. of the contract price until completion and

final approval of the work. They were not designed to protect against the claims of sub-contractors; no architects' certificate respecting them was required; and it does not appear that the architects would have refused to issue a certificate entitling the Heating Company to a payment of $2,500 on March 17, 1931, since the record indicates that more than ten per cent. of the value of the work completed remained in possession of the Regents after the payment was made. If the contract had prohibited payments to the general contractor without presentation of architects' certificates that labor and material claims to date had been paid, undoubtedly the surety would have been released from liability, at least to the extent of the payment in question. But such is not the case here. The right of the contractor to partial payments was not dependent upon whether he had paid his sub-contractors, but upon the proportion of the work which he had completed. Moreover, it was not shown that the payment of its contract price was due the Kring-Becker Company prior to March 17th, or that it had claimed or intended to claim a lien. The mere falsity of the affidavit, if it was false, is immaterial to appellant's liability, as the proper performance of the Heating Company was guaranteed by the bond. Since it was not shown that the Heating Company was not entitled to the payment of $2,500 on March 17th, gauged by the value of the completed work, the right of the surety to have ten per cent. of the value of the completed work retained is not shown to have been violated.

Thus, the defense becomes technical in the sense that it is predicated upon a technicality which is more than offset by the failure of appellant to introduce any evidence tending to show that the architects would have refused to issue the certificate had it been applied for.

As heretofore indicated, the defense interposed to the Regents' right to reimbursement for the amount expended by them, less the $1,201 credit, in discharge of the Kring-Becker Company claim, is that the bankruptcy of the Heating Company terminated its contract with the Kring-Becker Company, and that the latter had no right to furnish labor or material after that date. This contention may be sound in so far as the bankrupt's liability to pay therefor was concerned, and, under the authorities cited by appellant, would doubtless have defeated any attempt of the Kring-Becker Company to

445

fasten a mechanic's lien upon the property of a bank-
rupt owner with whom it had a specific contract, and to
whom, subsequent to the filing of the petition in bank-
ruptcy, it had furnished material and labor.   But we
know of no principle of law which would justify us in
holding that the bankruptcy of the Heating Company
precluded the Kring-Becker Company from completing,
at the Regents' request, its nearly completed contract
for the improvement of the latter's property, and there-
after asserting a lien within the prescribed period fol-
lowing the date on which the last item of material or
labor was furnished.   As said in the case of National
Surety Company v. Price, 162 Ky. 632, 172 S. W. 1072,
1077, after announcing the principle that the time for
asserting a lien may not be extended by furnishing labor
or material under a new and independent contract and
tacking the contracts together:

> "The rule above announced, however, has no appli-
> cation to the facts of this case.   Here it is not
> sought to tack material furnished under two sepa-
> rate and independent contracts for the purpose of
> extending the time for filing the notice.   The con-
> tractor abandoned his contract.   The owner did not
> make a new and independent contract with the ap-
> pellee Pell [a sub-contractor].   Through his author-
> ized agent, he told him to go ahead and finish the
> work.   There was no change in the contract price or
> in the amount of materials to be furnished.   The
> materials being required by the original contract,
> and that contract having been continued and
> adopted by the owner, and the materials having
> been supplied at his request, the time for giving the
> statutory notice should date, not from the time the
> last item was furnished while the contractor was in
> charge, but from the time the last item was fur-
> nished after the owner had told appellee to go ahead
> and complete his work."

Hence, we are of the opinion that the Kring-Becker
Company took the necessary steps within the prescribed
time to entitle it to a valid lien against the funds in the
possession of the Regents, and that the latter were ob-
ligated to pay the lien claim thus asserted and are enti-
tled to reimbursement from the appellant.   To hold
otherwise would be to establish the unmoral doctrine
that a surety may inflict upon an owner, whom it has

been hired to protect, serious inconvenience and financial loss through delay, and relegate for compensation to an insolvent bankrupt estate a sub-contractor who has faithfully done his work, and is ready, willing, and able to complete it, and who doubtless would have protected himself by asserting a lien within the prescribed time following the contractor's default, had he not acceded to the owner's request to complete the work undertaken. Nor do we perceive wherein the appellant was prejudiced by the Regents directing the completion of the swimming pool, since they possessed the undoubted right at the time of the principal contractor's default, to pay the claim of the Kring-Becker Company in order to forestall the filing of a mechanic's lien. However, we rest our decision squarely upon the fact that the Kring-Becker Company had the right to complete its contract at the request of the Regents; that under the circumstances shown the Regents had the right to make that request with or without the approval of the appellant; and that having taken the necessary steps to perfect its lien within the prescribed period following the last day on which it furnished material or performed labor pursuant to that request, the Kring-Becker Company acquired a lien which the Regents were protected in discharging by the bond executed by appellant.

The additional facts necessary to be considered in determining the asserted right of the Regents to reimbursement for the amount paid in satisfaction of the Sims Heater Company claim are as follows:

On September 8, 1931, the John Douglas Company, another sub-contractor whose lien is now conceded to have been enforceable, instituted an action against the Regents seeking such relief. The Sims Heater Company and the Kring-Becker Company were made parties defendant, and on February 1, 1932, the Sims Heater Company filed an answer and cross-petition against the Regents asking an enforcement of its lien. No summons were issued on the cross-petition, but on November 16, 1932, the Regents filed an answer thereto, and subsequent proceedings resulted in a judgment establishing the lien of the Sims Heater Company on the funds in the hands of the Regents.

It is contended by appellant that the filing of the cross-petition by the Sims Heater Company without the issuance of summons did not delay the running of the

one year limitation prescribed by Section 2495, Kentucky Statutes, for the enforcement of such claims, and that since the statement of lien was filed in the County Clerk's office on August 22, 1931, the lien was barred at the time the Regents entered their appearance to the cross-petition on November 16, 1932. However, the lien was not barred, as the filing of a cross-petition seeking merely the enforcement of a lien within the prescribed period of limitation is sufficient to stop the running of the Statute, though no summons be issued. It was so decided in the case of Ideal Savings, Loan & Building Association, etc. v. Town of Park Hills, 281 Ky. 571, 136 S. W. (2d) 748, construing Section 692, Civil Code of Practice. Hence, the Regents, by filing an answer to the cross petition, without pleading limitation, did not prejudice appellant's rights.

It is also contended that the action in which the judgment established the validity of the Sims Heater Company lien was not defended in good faith by the Regents. But the evidence does not support this contention, and we see no escape from the conclusion that the Regents were bound by the judgment and obligated to discharge the lien, and, therefore, are entitled to recover the amount thereof from appellant.

We shall refrain from discussing other principles of law urged in support of the Chancellor's decree, since its correctness is apparent in the light of all clearly applicable principles.

Judgment affirmed.

Whole Court sitting, except Judge Cammack.